ORIGINAL

FILED
NOV 1 9 2004
U.S. COURT OF
FEDERAL CLAIMS

UNITED STATES COURT
OF
FEDERAL CLAIMS

| | |
|---|---|
| IMPERIAL CONSTRUCTION GROUP, INC. | CIVIL ACTION NO. 04-1688C |
| Plaintiff, | |
| v. | |
| UNITED STATES OF AMERICA, | NOVEMBER 18, 2004 |
| Defendant. | |

**COMPLAINT**

COMES NOW the Plaintiff, Imperial Construction Group, Inc. ("Imperial"), by and through its attorneys, Genova, Burns & Vernoia, and for its Complaint against Defendant, the United States of America, acting by and through the General Services Administration ("GSA"), states as follows:

**NATURE OF THE CASE**

1. This case involves claims of wrongful, unreasonable, arbitrary abuse of discretion and bad faith conduct, breach of contract, breach of the covenant of good faith and fair dealing, quantum meruit and unjust enrichment against the United States of America, by and through the GSA, following the award of a contract to Imperial for the Roof Replacement and Façade Repairs at the Emanuel Celler United States Courthouse at Brooklyn, New York, and the subsequent termination of the contract for convenience.

2. In this action, Imperial seeks monetary damages, including performance costs, compensatory damages, interest, costs and attorney's fees, as a result of the GSA's wrongful conduct.

## JURISDICTION

3. This Court has jurisdiction over this matter pursuant to the Tucker Act, 28 U.S.C.§ 1491, and the Contract Dispute Act of 1978, 41 U.S.C. § 601 *et seq.*

4. All conditions precedent to the filing of this action have been satisfied.

## PARTIES

5. Plaintiff Imperial, is a corporation organized and existing under the laws of the State of New Jersey with a principal place of business at 505 North Broad Street, Elizabeth, New Jersey.

6. The Defendant is the United States of America acting through its agency, bureau, instrumentality, and/or agent, the GSA.

## FACTS

7. On or about August 1, 2001, Imperial was awarded Contract No. GS02P01PCU0036 (the "Construction Contract") by the GSA and was authorized to proceed with the performance of Roof Replacement and Façade Repair at the Emanuel Celler United States Courthouse, 225 Cadman Plaza East, Brooklyn, New York, 11201 (the "Project").

8. Pursuant to the terms of the Contract, Imperial purchased a Performance Bond. The premium for the Performance Bond was $20,855.00.

9. From August 1, 2001 through July 2002, Imperial performed and provided services pursuant to the Construction Contract.

10. On December 20, 2001, the GSA issued a "Stop-Work Order" to Imperial in accordance with the Federal Acquisition Regulation (FAR) Clause 52.242-15 of the contract entitled "Stop-Work Order".

11. The "Stop-Work Order" directed Imperial to "stop all work on the [Construction Contract] . . . to stop ordering materials, supplies and equipment . . . and to stop all subcontractor work and take all steps to minimize the incurrence of costs allocable to the work covered in the [Construction Contract]".

12. In accordance with the "Stop-Work Order", Imperial took all the necessary steps to minimize the incurrence of costs allocable to the work covered in the Construction Contract.

13. On December 20, 2001, Imperial forwarded a "Stop-Work Order" to its subcontractor Big Apple Roofing Co., Inc. ("Big Apple") directing Big Apple to stop all ordering of materials, supplies and equipment for the Project. Imperial also directed Big Apple to take all reasonable steps to minimize the incurrence of costs allocable to Big Apple's work under the Construction Contract.

14. On or about June 7, 2002, the GSA forwarded a letter to Imperial notifying Imperial that the Construction Contract was terminated in its entirety for the Government's convenience pursuant to the clause entitled, "Termination for Convenience of the Government (Fixed Price) (Short Form)" (FAR 52.249-1 (APR 1984) ("Termination Letter"). The termination was effective June 7, 2002 at 11:59 p.m.

15. The Termination Letter directed Imperial to stop all work and make no further shipments and place no further orders relating to the contract except for:

i. The continued portion of the contact, if any;

ii. Work-in-process or other materials that you may wish to retain for your own account;

iii. You are to complete the following:
a) Complete the roofing over the area used for the roofing pilot;
b) Remove the material hoist/stair and patch any holes and repair any damage made to the Façade during the installation of the hoist;
c) Please note that the sidewalk bridging shall not be removed until further notice from the Contracting Officer.

iv. Work-in process that the Contracting Officer authorizes you to continue (A) for safety precautions, (B) to clear or avoid damage to equipment, (C) to avoid immediate complete spoilage of work-in-process having a definite commercial value, or (D) to prevent any other undue loss to the Government. (If you believe this authorization is necessary or advisable, immediately notify the Contracting Officer by telephone or personal conference and obtain instructions.)

16. In accordance with the GSA's directive, Imperial furnished the required Notices of Termination to its subcontractors and suppliers.

17. Subsequent to June 7, 2002, pursuant to the direction of the GSA, Imperial continued to perform certain work on the Project, including but not limited to, services related to asbestos removal which were performed at the direction and approval of the GSA.

18. On or about January 13, 2003, Imperial submitted a settlement proposal (Total Cost Basis) ("Settlement Proposal") in the amount of $663,719.60 to the GSA.

19. On or about August 27, 2003, Imperial forwarded the required certification which certified its Settlement Proposal, in the amount of $633,719.60, to the GSA for expenses and lost profits it incurred as a result of the Government Termination for Convenience.

20. Imperial received partial payment, in the amount of $303,453.72, for costs it incurred on the Construction Contract.

21. A GSA Auditor subsequently reviewed Imperial's termination Settlement Proposal of $663,719.60 and determined that the proposed cost or pricing data submitted by Imperial did not include sufficient detailed documentation to support the amounts proposed in the settlement offer.

22. On or about June 20, 2003, GSA met with Imperial in an attempt to negotiate a settlement.

23. GSA informed Imperial that, based on the GSA's auditor's findings, payment of $74,456.00 plus profit of 12% representing work performed before termination was being offered in settlement of the claim.

24. Imperial did not accept GSA's proposed settlement.

25. Imperial advised GSA that it had documentation to support the amount requested in their settlement proposal.

26. In or about September 2003, Big Apple filed a Complaint against Imperial in the United States District Court for the Eastern District of New York alleging breach of the Subcontract Agreement it entered into with Imperial for work to be performed on the Project.

27. GSA was advised of Big Apple's Complaint against Imperial.

28. On or about November 20, 2003, GSA forwarded notification to Imperial advising Imperial that the GSA had determined that Imperial is entitled to $74,456.00 plus a profit of 12% ($8,934.72) for a total of $83,390.72 as a result of the Termination of its Contract for Convenience.

29. The November 20, 2003 letter stated it was a final decision of the contracting officer.

30. On December 8, 2003, Imperial provided GSA with a written rebuttal of the facts upon which the GSA relied in making its final decision.

31. On January 27, 2004, GSA advised Imperial that it would allow Imperial to present additional documentation to substantiate Imperial's actual costs.

32. Imperial made several requests for a copy of the Auditor's Report in an effort to address the specific claims being denied by the GSA.

33. The GSA refused to provide the Auditor's Report.

34. A request was made by Imperial's Bonding Company pursuant to the Freedom of Information Act ("FOIA") for GSA's entire file regarding the Construction Contract.

35. GSA's response to the FOIA request did not include the Auditor's Report.

36. Imperial subsequently provided GSA with additional supporting documentation it received from Big Apple and other subcontractors in further support of Imperial's claim against the GSA.

37. On or about November 10, 2004, the GSA met with Imperial in an effort to negotiate a settlement.

38. During the November 10, 2004 meeting, the GSA acknowledged it was responsible for paying certain additional costs incurred by Big Apple pursuant to the Construction Contract.

39. During the November 10, 2004 meeting, Imperial was, for the first time, provided with the GSA's Auditor's Report. The Auditor's Report itemized the costs claimed by Imperial which GSA refused to pay.

40. The GSA abused its discretion and wrongfully and in bad faith improperly denied Imperial's claim for the cost of the required Performance Bond.

41. The GSA abused its discretion and wrongfully and in bad faith improperly denied Imperial's claim for its subcontractor costs incurred for work and services provided on the Project.

42. The GSA abused its discretion and wrongfully and in bad faith improperly denied Imperial's claim for the labor and salary costs it incurred for the project managers assigned to work on the Project.

43. The GSA abused its discretion and wrongfully and in bad faith improperly denied GSA's claim for overhead and lost profits.

44. The GSA abused its discretion and wrongfully and in bad faith improperly denied GSA's claim for costs for its subcontractor Big Apple Roofing Co., including but not limited to work associated with the asbestos removal on the Project.

45. The GSA abused its discretion and wrongfully and in bad faith improperly denied GSA's claim for costs for its subcontractor Safeway Steal Products, Inc.

46. The GSA abused its discretion and wrongfully and in bad faith improperly denied GSA's claim for costs for its subcontractor Paragon Restoration Corporation.

47. During and after the November 10, 2004 meeting, Imperial disputed the Auditor's deductions and provided further documentation to supports its claims.

48. To date, the GSA has failed and refused to tender payment for all costs incurred by Imperial under the Construction Contract.

49. This appeal is being brought within one year of the contracting officer's final decision, and accordingly, this appeal is timely filed.

**COUNT I**

50. Imperial incorporates by reference the allegations contained within Paragraphs 1 through 49 of the Complaint as if set forth at length herein.

51. The GSA was and is obligated to compensate Imperial for all services performed and all costs incurred on the Project.

52. The GSA has wrongfully refused to pay for all services and costs incurred by Imperial for the services performed and work completed on the Emanuel Celler Federal Building in breach of the Construction Contract.

53. Imperial performed all the terms and conditions of the Construction Contract required of it up to the termination of the Construction Contract for convenience.

54. The GSA has fully satisfied and complied with all conditions precedent to recover for breach of the Construction Contract.

55. GSA breached the Construction Contract by failing and refusing to tender the amount due and owing Imperial under the Construction Contract.

56. As a direct and proximate result of the foregoing breaches of contract by the GSA, Imperial has suffered, among other losses, economic losses and damages in an amount to be proven at the time of trial but which is not less than $330,265.88, plus costs, interest and attorney's fees.

## COUNT II

57. Imperial incorporates by reference the allegations contained within Paragraphs 1 through 56 of the Complaint as if set forth at length herein.

58. The GSA was obligated by common law and implied contract to act in good faith and to deal with Imperial fairly.

59. The GSA breached such obligations to Imperial by acting in an unlawful, improper, arbitrary and capricious and bad faith manner, by virtue of, among other things, its refusal to provide Imperial with a copy of the GSA's Auditor's Report; refusal to consider all supporting documentation in support of Imperial's certified Settlement Proposal; refusal to pay for actual costs which were indisputably incurred by Imperial; and refusal to pay for materials specifically ordered for the Project.

60. As a direct and proximate result of the material breaches of obligations by the GSA, Imperial has suffered, among other losses, economic losses and damages in an amount to be proven at the time of trial, but not less than $330,265.88, plus costs, interest and attorney's fees.

## COUNT III

61. Imperial incorporates by reference the allegations contained within Paragraphs 1 through 60 of the Complaint as if set forth at length herein.

62. The fair and reasonable value of the Project work, labor and materials supplied by Imperial and its subcontractors at the specific instances and requests of the GSA for which Imperial has not received payment is to be proven at the time of trial but is not less than $330,265.88 plus costs, interest and attorney's fees.

## COUNT IV

63. Imperial incorporates by reference the allegations contained within Paragraphs 1 through 62 of the Complaint as if set forth at length herein.

64. As a result of the work, labor and materials supplied by Imperial and its subcontractors to the Project, the GSA has been unjustly enriched in an amount to be determined at the time of trial but which is not less than $330,265.88 plus costs, interest and attorney's fees.

## PRAYER FOR RELIEF

WHEREFORE, Imperial Construction Group, Inc. respectfully requests that this Court enter judgment in its favor and award monetary damages and other relief against the United States of America as follows:

1. vacating the Contracting Officer's Final Decision;

2. awarding Imperial monetary damages in an amount to be determined at trial but not less than $330,265.88 plus interest;

3. awarding costs, disbursements and reasonable attorneys fees; and

4. such further relief as this Court deems equitable and just.

Dated this 18th day of November 2004.

**GENOVA, BURNS & VERNOIA**

Kathleen Barnett Einhorn (KE 2743)
Genova, Burns & Vernoia
Trinity Centre
115 Broadway, Suite 1504
New York, New York 10006
(212) 566-7188
Attorneys for Plaintiff,
Imperial Construction Group, Inc.

F:\USERS\COMMON\US5\1573\003\Pleadings\complaintuscfc.doc